UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IPDEV CO., <br><br> Plaintiff, <br><br> v. <br><br> AMERANTH, INC., <br><br> Defendant. <br><br> AMERANTH, INC., <br><br> Counter Claimant, <br><br> v. <br><br> IPDEV CO., <br><br> Counter Defendant. | Case No.: 14cv1303 DMS (WVG) <br><br> **ORDER (1) GRANTING AMERANTH'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY DUE TO INADEQUATE WRITTEN DESCRIPTION AND (2) DENYING IPDEV'S MOTION FOR SUMMARY JUDGMENT RE: WRITTEN DESCRIPTION SUPPORT AND ENABLEMENT** |

This case comes before the Court on Ameranth's motion for summary judgment of invalidity due to inadequate written description and IPDEV's motion for summary judgment regarding written description support and enablement. The motions came on for hearing on March 23, 2018. Andrew Warnecke, Brian Orr and Gino Serpe appeared for IPDEV and William Caldarelli and John Osborne appeared for Ameranth. After thoroughly reviewing the parties' briefs, the relevant evidence and legal authority and the

1

record herein, and after hearing argument from counsel, the Court grants Ameranth's motions and denies IPDEV's motion.

## I.
## BACKGROUND

IPDEV filed the present case against Ameranth alleging a claim for patent interference pursuant to 35 U.S.C. § 291. IPDEV alleges, and Ameranth does not dispute, there is an interference-in-fact between IPDEV's United States Patent No. 8,738,449 ("the '449 Patent") and Ameranth's United States Patent Number 8,146,077 ("the '077 Patent") by virtue of IPDEV's copying of certain claims of the '077 Patent into the '449 Patent. To prevail on this claim, IPDEV must prove it was the first party to reduce to practice the invention described in the copied claims. IPDEV seeks to establish a priority date of November 24, 1997, which is the filing date of another IPDEV Patent, United States Patent Number 5,991,739 ("the '739 Patent"). To establish that priority date, IPDEV must show the specification of the '739 Patent, which is the same as the specification of the '449 Patent, satisfies the written description and enablement requirements of 35 U.S.C. § 112, ¶ 1.

Ameranth raised a number of affirmative defenses to the patent interference claim. Those affirmative defenses are: (1) the '449 Patent is invalid as anticipated, (2) the '449 Patent is invalid as obvious, (3) failure to disclose true inventorship of the '449 Patent, (4) lack of conception and reduction to practice of the '449 Patent, (5) inadequate written description of the '449 Patent, (6) lack of enablement of the '449 Patent, (7) inequitable conduct in the prosecution of the '449 Patent, (8) unclean hands, (9) time bar, (10) laches and (11) failure to state a claim. Ameranth also alleged a counterclaim for invalidity of the '449 Patent due to time bar, inadequate written description, lack of enablement, and failure of conception and reduction to practice, and another counterclaim for unenforceability of the '449 Patent due to inequitable conduct.

Turning to the interfering patents, the '449 Patent was filed on August 22, 2012. It is a continuation of application No. 09/282,645, filed on March 31, 1999, which is a

continuation of application No. 08/976,793, filed on November 24, 1997, which application issued as the '739 Patent. The '449 Patent names as its inventors Bryan T. Cupps and Tim Glass. IPDEV is the assignee. The '449 Patent is titled, "Internet Online Order Method and Apparatus." Generally, it discloses "[a] system and method for providing an online ordering machine that manages the distribution of products over a distributed computer system[.]" ('449 Patent, Abstract.) In the "Background of the Invention" section, the inventors described three prior art systems, World Wide Waiters, Waiters on Wheels and PizzaNet. (*Id.* at 1:19-2:22.) Each of those systems enabled consumers to order food from participating restaurants over the internet, but each had shortcomings: The World Wide Waiters system required each participating restaurant to have Internet access to the World Wide Waiter server. It also used "statically configured menu web pages[,]" which "hamper[ed] the maintainability and scalability of the server to take on additional restaurants." (*Id.* at 1:51-53.) The Waiters on Wheels and PizzaNet systems required "communicating with the restaurant through a facsimile machine[,]" and also required subsequent communications between the customer and the delivery system [be] performed via telephone calls which requires manual intervention." (*Id.* at 2:16-22.) To overcome these shortcomings, the '449 Patent disclosed an "online ordering machine" that:

> provides the customers with product information from various vendors whose delivery range is within the customers location or with product information from vendors having take out service within a specified range from the customers location. The online ordering machine accepts orders from the customer for a particular product from a selected vendor.

(*Id.* at 2:32-39.) The order is then converted into voice instructions transmitted to the vendor through a telephone call or via facsimile with follow up voice instructions via telephone call. (*Id.* at 2:39-43.) The Description of the Preferred Embodiments describes the computer architecture of the invention, (*id.* at 3:50-5:17), the use of geocodes "to determine whether a customer is within a specified geographic area of a restaurant's delivery area or whether a restaurant is within a specified geographic area of the customers

take out range[,]" (*id.* at 6:20-8:25), the interactive voice recognition system, (*id.* at 8:27-49), the dynamic creation of menu web pages, (*id.* at 8:51-9:41),and the ordering process. (*Id.* at 9:43-11:40.)

The '077 Patent was filed on April 22, 2005. It is a continuation of application No. 10/016,517, filed on November 1, 2001, which application issued as U.S. Patent No. 6,982,733, which is a continuation-in-part of application No. 09/400,413, filed on September 21, 1999, which application issued as U.S. Patent No. 6,384,850.[1] The '077 Patent names as its inventors Keith McNally, William Roof and Richard Bergfeld. Ameranth is the assignee. The Abstract of the '077 Patent describes the invention as:

> An information management and synchronous communications system and method [that] facilitates database equilibrium and synchronization with wired, wireless and Web-based systems, user-friendly and efficient generation of computerized menus and reservations with handwritten/voice modifications for restaurants and other applications that utilize equipment with nonstandard graphical formats, display sizes and/or applications for use in remote data entry, information management and communication with host computer, digital input device or remote pager via standard hardwired connection, the internet, a wireless link, printer or the like.

There are 21 claims in the '449 Patent and 18 claims in the '077 Patent. The claims recite numerous elements and limitations, but as it relates to the present motion, the following language from independent claims 1 and 13 is the most relevant. The language of claim 1 focuses on software that configures and synchronizes in real time menus from a master menu with menus on a handheld computing device, as follows:

> menu configuration software enabled to generate a programmed handheld menu configuration from said master menu for wireless transmission to and programmed for display on a wireless handheld computing device, said programmed handheld menu configuration comprising at least menu categories, menu items and modifiers and wherein the menu configuration

---

[1] In the related infringement proceedings, Ameranth alleged infringement of the '733 and '850 Patents. Those Patents have since been declared invalid by the Federal Circuit after proceedings before the Patent Trial and Appeal Board.

4

> software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu,

(*id.* at 12:34-48.) The language of claim 13 focuses on hospitality "information" and provides "real time communications control software enabled to link and synchronize hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page." (*Id.* at 15:38-41.)

## II.

## DISCUSSION

Both parties move for summary judgment on whether the '449 Patent satisfies the written description requirement. The written description requirement is found in 35 U.S.C. § 112. Paragraph 1 of this section states:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

35 U.S.C. § 112, ¶ 1. The test of written description "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art. Based on that inquiry, the specification must describe an invention understandable to that skilled artisan and show that the inventor actually invented the invention claimed." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*). "Requiring a written description of the invention limits patent protection to those who actually perform the difficult work of 'invention' - - that is, conceive of the complete and final invention with all its claimed limitations - - and disclose the fruits of that effort to the public." *Id.* at 1353. "Compliance with the written description requirement is a question

of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008).[2]

In this case, the claims at issue contain a number of limitations, and the parties spend a considerable amount of time arguing over limitations that appear to have written description support in the specification, *e.g.*, the menu configuration software, the master menu and the wireless handheld computing device. The two limitations set out above, however, deserve closer consideration. These limitations concern synchronization of menu information between a master menu and menus on a client device, and synchronization of hospitality application information between a master database, wireless handheld computing device, web server and web page. Those limitations recite: (1) "at least the menu categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu," and (2) "real time communications control software enabled to link and synchronize hospitality information simultaneously between the master database, wireless handheld computing device, web server and web page."

The first limitation is found in claim 1. This claim is directed to "configuring and transmitting hospitality menus" on a master menu and a programmed handheld menu configuration. ('449 Patent at 12:18-20.) IPDEV argues this first limitation finds written description support in several portions of the specification. IPDEV specifically relies on column 8, lines 53-57 and 61-63. Lines 53 to 57 state, "The online ordering machine generates menu web pages that are specific to a particular customer's request. The creation of the menu web pages is done dynamically at runtime in order to provide data that accommodates a customer's request." ('449 Patent at 8:53-57.) Lines 61-63 state, "In the present technology, each menu web page is configured at runtime and customized for a

---

[2] The parties here agree the issue of written description is amenable to resolution on summary judgment.

particular customer's request." (*Id.* at 8:61-63.) IPDEV argues the dynamic creation of web pages "at 'runtime' from information contained in the menu file system based on input from a user at a client computer" satisfies the "synchronized in real time" limitation.

The Court disagrees with IPDEV that these portions of the specification provide support for this synchronization limitation. As set out in the Court's claim construction order, "synchronized" means "made, or configured to make, consistent." The portions of the specification cited by IPDEV are silent on this concept. Rather, the portions of the specification cited by IPDEV explain how the online ordering machine actually creates menu web pages. That the menu web pages are generated "dynamically at runtime" and in response to user input says nothing about synchronization between the menu information of the programmed handheld menu configuration and "analogous information comprising the master menu."

At oral argument, IPDEV addressed this specific limitation more directly, arguing there is synchronization between the menu categories, menu items and modifiers because the information contained on the menu web pages is the same as the information contained in the online ordering machine. For example, each contains the same menu categories (*e.g.*, pizza), menu items (*e.g.*, cheese pizza), and modifiers (*e.g.*, small, medium, large). That the information is the same, however, does not necessarily mean it is synchronized. In the system described in the '449 specification, the menu categories, items and modifiers on the menu web pages are simply copies of information "stored in the memory on the online ordering machine," (Hrg. Tr. 57, March 23, 2018), much like the "statically configured menu web pages" described in the prior art World Wide Waiters system. ('449 Patent at 1:51.) The information stored on the online ordering machine is simply copied into a menu web page in the same way one would make a photocopy. The information on the copy is the same as the original, but the two pages are not "synchronized," much less

///

///

///

"synchronized in real time" as required by the claims.[3] In essence, the system described in the '449 specification does not do anything to *make* the menu web pages described above, as they appear on the client device, consistent with the information in the online ordering machine. Rather, that information is inherently consistent, and thus needs no synchronization. Thus, there is no written description support in the specification of the '449 Patent for this concept of synchronization.

Nor is there written description support for the synchronization limitation set out in item (2) above. That limitation is found in claim 13, which is directed to the synchronization of hospitality application information between a "master database, wireless handheld computing device, web server and web page." ('449 Patent at 15:40-41.) The specific language at issue here recites "real time communications control software enabled to link and synchronize hospitality information simultaneously between the master database, wireless handheld computing device, web server and web page." IPDEV argues this limitation finds written description support in the specification at column 9, lines 61-65 and column 10, lines 7-11 and 12 to 15. However, these portions of the specification are silent on this concept of synchronization. Instead, they describe (1) how the system obtains the time at the customer's location and how that information is used "to determine which restaurants meeting the customer's criteria are currently open[,]" ('449 Patent at 9:64-65), (2) how the online order procedure "searches the order database 128 for those restaurants that deliver to the customer's location or are within the customer's desired takeout range (step 306)[,]" (*id.* at 10:7-11), and (3) how a "menu web page including a

---

[3] IPDEV's expert Dr. Stevenson states in his expert report, "Any updates to the master menu are reflected in parameters of the Menu File System and would be synchronized to the menu configurations generated for the handheld device." (Notice of Lodgment in Supp. of IPDEV's Mot., Ex. 2 at 35.) However, Dr. Stevenson fails to cite any portion of the '449 specification to support this statement. Indeed, the '449 specification is silent on the process of making changes to either the menu categories, items or modifiers on the client device or the master menu, much less how changes on one of those devices would be synchronized on the other.

8

14cv1303 DMS (WVG)

list of these restaurants is dynamically created by the web creation procedure 126 and provided to the customer as shown in FIG. 12C." (*Id.* at 12-15.) As with the portions of the specification discussed above, these portions of the specification do not speak to the concept of synchronization at all, much less synchronization of "hospitality application information simultaneously between the master database, wireless handheld computing device, web server and web page." Thus, the Court finds this "synchronization" limitation also lacks written description support in the specification.

Although the issue of written description is a question of fact, and each side presents evidence on this issue, the Court finds no reasonable fact finder could find for IPDEV on this issue. In particular, there is nothing in the specification that supports the synchronization elements discussed above. Because each of these synchronization elements is contained in the claims of the '449 Patent, the Court grants Ameranth's motion for summary judgment of invalidity of the '449 Patent due to inadequate written description, and denies IPDEV's cross-motion on the issue.

## III.
## CONCLUSION AND ORDER

For the foregoing reasons, Ameranth's motion for summary judgment of invalidity of the '449 Patent due to inadequate written description is granted, and IPDEV's cross motion for summary judgment re: written description is denied. All other pending motions, save for any motions to file documents under seal, are denied as moot, and all pending dates in this case are vacated. The Clerk of Court shall enter judgment accordingly.

**IT IS SO ORDERED**.

Dated: March 27, 2018

Hon. Dana M. Sabraw
United States District Judge